## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

RESOURCE TECHNOLOGY
CORPORATION,

                                   **Case No.: 1:15-cv-23357**

      Plaintiff,

v.

U.S. PRECIOUS METALS, INC.,

      Defendant.

_____/

U.S. PRECIOUS METALS, INC.,

      Third-Party Plaintiff,

v.

PLASMAFICATION TECHNOLOGY
HOLDINGS, LLC; et al,

      Third-Party Defendants.

_____/

### PLAINTIFF/COUNTERDEFENDANT'S MOTION TO DISMISS COUNTERCLAIM AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiff/Counter Defendant Resource Technology Corporation ("RTC"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 8 and 12(b), and other applicable law, hereby moves this Court to dismiss the Counterclaim filed herein by Defendant/Counter Plaintiff, U.S. Precious Metals, Inc. ("USPR") on or about September 25, 2015, and further states as follows:

## I.     INTRODUCTION

### A.    Procedural Case History

RTC filed this action in the Circuit Court of the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida.  On September 4, 2015, USPR filed its Notice of Removal. [DE-1].  In its original complaint, RTC alleged claims for Specific Performance, Declaratory Relief and Conversion.  [DE-1-3].

In response to this pleading, USPR filed its Answer, Affirmative Defenses, Counterclaim and Third-Party Complaint.  [DE-7].  The exhibits attached to the Counterclaim and Third-Party Complaint exceed 1000 pages of documents, many of which are composites, duplicative, and/or irrelevant to the causes of action USPR purports to assert.  [DE-7-1, 7-2, 8, 8-1, 8-2, 9, 9-1, 10, 10-1, 11, 11-1, 11-2, 11-3, 12, 12-1, 12-2, 12-3, 12-4, 12-5, 12-6, 12-7 and 12-8].

With the filing of its Third-Party Complaint, USPR named as Third-Party Defendants, Plasmafication Technology Holdings, LLC ("PTH"), Gennaro Pane ("Pane"), Joe Spano ("Spano"), Barrington Schneer ("Schneer"), and Chad Altieri ("Altieri").  USPR asserts in the Counterclaim and Third-Party Complaint that "[t]his Court has subject matter jurisdiction over this Counterclaim, pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between USPR, a citizen of *Delaware* and *New Jersey*, and RTC a citizen of *Florida*…" (emphasis added) [DE-7, P. 15, ¶ 14].  Yet USPR plainly states that both Pane and Spano are individuals residing in *New Jersey* [DE-7, P. 14, ¶10; P. 15, ¶ 11].  As a corollary, USPR asserts that this Court has jurisdiction over Spano and Pane not only under 28 U.S.C. § 1367 but also pursuant to Florida's long-arm statute, Section 48.193, Fla. Stat., because they operated, conducted, engaged in or carried on a business venture in this state.  [DE-7, P. 16, ¶ 18].

**B.      The Parties' Dispute:**

By filing its Counterclaim/Third-Party Complaint, USPR attempts to avoid its legal responsibilities under the "Certificate of Designations of Rights, Privileges, and Preferences of

Series A Super Voting Preferred Stock" adopted by USPR [DE-12-2, PP. 1-4] and the "Certificate of Series A Super Voting Preferred Stock" actually issued to RTC thereunder [DE-12-1, PP. 1-2]. The certificate of designations and the preferred stock issued to RTC stems from the *second* of two sequential contractual arrangements[1] between RTC and USPR. However, USPR's attack on the second agreement [DE 7-1] improperly relies on the documentation underlying the first agreement [DE 9-1 and 11-1] which was voided *ab initio* and fully released both parties' then preexisting claims and obligations.

In this case, as in all disputes, the parties disagree on various facts associated with the case. However, in this matter it is irrefutable that many of the alleged due diligence documents complained of in USPR's pleadings [DE-8-1] pre-date the voided contract and all predated the second contract, entitled Restructuring Agreement [DE 7-1], which served as a settlement of the parties' initial disputes under the first contract, entitled Share Exchange Agreement [DE 9-1].

Significant to the sundry amorphous claims and allegations UPSR now asserts, the January 29, 2014, Restructuring Agreement [DE 7-1] included clear and precise language voiding the first contract [DE 9-1] *ab initio* and, in Section 10.01(a)-(b), detailing the general release to which both RTC and USPR agreed as part of the resolution of their dispute(s) under the first agreement. Section 10.01(a) itemizes the release(s) and discharge(s) by RTC and its shareholders; Section 10.01(b) itemizes the release(s) and discharge(s) by USPR. Specifically, Section 10.01(b) expressly included USPR's clear agreement that it would

> forever relieve, release and discharge each of RTC and the RTC Shareholders … ("RTC Released Entities"), jointly and severally, *from any and all claims*, debts,

---

[1] The first contract was superseded and replaced in full expressly by the second contract; it is this second contract, which underlies any and all claims at issue in this case. [DE 7-1, P. 1] ("the parties hereto desire to restructure the transactions contemplated by the Original Agreement by cancelling and terminating, ___**ab initio**___, **the Original Agreement and entering into new transactions and agreements as contemplated herein**". (emphasis in original))

> liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, *actions and causes of actions, of whatever kind or nature,* whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed ("Claims"), *based upon, in any way arising out of, or pertaining to, or in connection with the Original Agreement* (the "RTC Released Claims"). The RTC Released Claims *include, but are not limited to,* all Claims arising under common law or equity, *breach of contract or public policy, arising in tort* (including libel, slander, defamation, tortious interference in a contract or contractual opportunity, or intentional infliction of emotional distress), *or under any other theory of recovery.*

(emphasis added) [DE 7-1, P. 16, § 10.01(b)].

USPR's highly sophisticated directors and officers, represented by competent counsel, fully and knowingly agreed to and participated in negotiating this clear and precise language. Yet, in its Answer, Affirmative Defenses, Counterclaim and Third-Party Complaint filed in response to RTC's Complaint, USPR now invites this Honorable Court to overlook this express contractual language and release, and reactivate the voided first agreement [DE 9-1].

Procedurally, USPR fails to meet the fundamental pleading requirements of Federal Rules of Civil Procedure 8(a), 8(d), and 12(b). Lastly, even if USPR stated any sufficient claims, its pleading here destroys this Court's diversity jurisdiction, and further fails to establish this Court's exercise of supplemental jurisdiction over Third-Party Defendants Pane and Spano, or long-arm jurisdiction over Spano (see discussion in Third-Party Defendants' Motion to Dismiss, incorporated herein by reference).

## II.      MOTION TO DISMISS STANDARD

The Federal Rules of Civil Procedure require a plaintiff to assert "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Fed. R. Civ. P.* Rule 8(a)(2). In applying that rule in the context of a motion to dismiss, the U.S. Supreme Court has reiterated consistently that "[s]pecific facts are not necessary; the statement need only *give the defendant fair notice of what the...claim is and the grounds upon which it rests.*" (emphasis

added) *See Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-67 (2007).  *See also Anthony Sterling, M.D. v. Provident Life and Acc. Ins. Co.,* 519 F. Supp. 2d 1195, 1208-09 (M.D. Fla. 2007); *Oberstar v. Divosta Homes, L.P.*, 2008 WL 4811408, *3 (M.D. Fla. 2008).  Stated in the reverse, a defendant is not required to go on what amounts to a scavenger hunt through more than two-hundred allegations and more than 1000 pages of exhibits to ferret out what the claims may be and which such claims and allegations are asserted against that specific defendant.  *Assa Compania de Seguros, S.A. v. Codotrans, Inc.,* 15 F.Supp.3d 1271, 1275 (S.D. Fla. 2014) (A written instrument included as an exhibit to a pleading is part of the pleading for all purposes…).

Certainly, a court reviewing a complaint upon a motion to dismiss must do so in the light most favorable to the plaintiff.  *See Anthony Sterling, M.D.,* 519 F. Supp. 2d at 1209-1210.  The question the court must therefore answer is not whether the plaintiff will ultimately prevail, but whether the *factual* allegations contained within the four corners of a complaint entitles the claimant to offer evidence to support its claims.  *Id.*

The pleading standard refined in *Twombly,* and later in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action", though it does not require a heightened pleading standard outside of fraud-based claims.  *Twombly*, 550 U.S. 554, 570 127 S.Ct. at 1965, 1974.  *See also Sibley v. The Florida Bar,* 2008 WL 4525395, *3-4 (N.D. Fla. 2008), citing *Twombly*, 127 S.Ct. at 1964-67 and *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 510-515, 122 S.Ct. 992, 996-99 (2002) ("The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.").  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true and construed in the light most favorable to the plaintiff, to state a claim for relief that is plausible on its face." *McClain v. Iradimed Corp.*, --- F. Supp. 3d ---, 2015 WL 3649461, at *4-5 (S.D. Fla. 2015), citing *Iqbal, id.*, (quoting *Twombly*, 550 U.S. at 570).  But a complaint must also comply with Rule 8's mandate, noted *supra*, that a pleading "give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests." *Swierkiewicz,* 534 U.S. at 510-515.  Where it fails to do so, dismissal is proper.

Inarguably, all of the *factual* allegations plead in the challenged pleading are admitted by defendants and must be taken as true by the Court for the purposes of the motion to dismiss.  *See Iqbal, id.* at 678, quoting *Twombly*, 550 U.S. at 555 ("for the purposes of a motion to dismiss we must take *all* of the factual allegations in the complaint as true" (emphasis added)).  The key, of course, is that only *factual* allegations merit such standing on a motion to dismiss; conclusory statements, legal arguments, speculative theories, and "kitchen sink" assertions garner no such admission or consideration.  "A pleading that offers 'a formulaic recitation of elements of a cause of action will not do." *McClain*, 2015 WL 3649461 at *5, quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). " "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts *will not prevent dismissal*." " (emphasis added) *McClain, id.*, quoting *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002).  Yet that is precisely what USPR's pleading proffers here.

When viewed against this backdrop, USPR's pleading(s) fails to meet the concise notice pleading standard required by the Federal Rules and applied by *Twombly* and *Iqbal*.  USPR's pleading(s) further fails to state viable causes of action so as to invoke this Court's jurisdiction.  Accordingly, RTC's Motion to Dismiss should be granted and USPR's pleading should be dismissed.

## III.    DISCUSSION OF AUTHORITY

### A.    Jurisdiction

#### i.    Original Diversity Jurisdiction is Destroyed.

As this Honorable Court is no doubt aware, the law is clear that "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).    This principle "clearly demonstrates a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant." *Owen Equip.*, 437 U.S. at 374.    Here, indisputably and as made plain by USPR's own allegations, USPR, a corporation, is deemed a citizen of both Delaware and New Jersey. [DE-7, P.15, ¶ 14. Unfortunately for USPR, Pane and Spano[2], individuals, are also citizens of New Jersey.  [DE-7, PP. 14 – 15, ¶¶ 10-11.  Normally, this would be salient only as to the Third-Party Complaint and not a procedurally separate Counterclaim.  Here, however, USPR's pleading has combined these two sets of claims, labels notwithstanding, as it includes allegations against Third-Party Defendants in the Counterclaim, and includes allegations against Counter Defendant RTC in the Third Party Complaint.  Thus, the issue of joining non-diverse Third-Party Defendants Pane and Spano also affects this Court's removal diversity jurisdiction as to the Counterclaim.

Because each defendant is not a citizen of a different State from USPR, original diversity jurisdiction is destroyed.  Diversity of jurisdiction was the sole basis for USPR's removal of this matter to this Court.  Without that diversity jurisdiction, this Court has no power to hear this matter.  USPR's pleading should be dismissed or remanded.

---

[2] To the extent that it may assist this Court in ruling on RTC's Motion to Dismiss, Third-Party Defendants' argument(s) in their Motion to Dismiss regarding supplemental jurisdiction under 28 U.S.C. § 1367, which USPR asserts as against Pane and Spano, is adopted and incorporated by reference as if fully set forth herein.

ii.  **Supplemental Jurisdiction is Inapplicable.**

As noted herein above, to the extent that it may assist this Court in ruling on RTC's Motion to Dismiss, Third-Party Defendants' argument(s) in their Motion to Dismiss regarding supplemental jurisdiction under 28 U.S.C. § 1367, which USPR asserts as against Pane and Spano, is adopted and incorporated by reference as if fully set forth herein.

**B.**  **USPR's Counterclaim and Third-Party Complaint Violates the Federal Pleading Standard(s) and Fails to Provide RTC with Fair Notice of USPR's claims and the Bases Therefor.**

The law is clear that federal pleadings are subject to dismissal under the Rules even if they state viable claims where said claims "are so poorly pleaded that they warrant dismissal … [as] "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." " (emphasis added by court) *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015), quoting *Anderson v. District Bd. Of Trustees of Cent. Florida Community College,* 77 F.3d 364, 366 (11th Cir. 1996).

Disputed pleadings also warrant dismissal where they offer only " " 'a formulaic recitation of the elements of a cause of action' " ". *McClain v. Iradimed Corp.*, --- F. Supp. 3d ---, 2015 WL 3649461, *5 (S.D. Fla. 2015), quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).   And " "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." " *McClain*, 2015 WL 3649461 at *5, quoting *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002).

As discussed herein below, USPR's pleading here fits within that category of poor and fatally-flawed pleadings.  As such, it warrants dismissal.

### i. USPR's Pleading is a Shotgun Pleading and Incorporates by Reference of 121 out of 229 Allegations in Each Cause of Action Asserted.

USPR's pleading here is a far cry from a "short and plain statement of the claim showing" entitlement to relief by way of "simple, concise, and direct" allegations, providing fair notice to RTC and the Third-Party Defendants of the purported claims against them. Instead, USPR's Counterclaim and Third-Party Complaint is a virtual sandstorm of vacuous and conclusory allegations and argument, with few actual facts and little specificity. Moreover, USPR's pleading here is based largely on purported actions, inactions, and events that occurred prior to the execution of the parties' first Agreement [DE- 9-1, PP. 32-66] and/or the second Agreement [DE 7-1], which voided the first Agreement *ab initio* and fully released each other from any and all preexisting claims.

USPR's pleading spans a staggering 229 paragraphs (including 121 paragraphs of general allegations incorporated by reference into each of its thirteen counts and asserted against every 'defendant'). Additionally, the multiple exhibits referenced by and incorporated into USPR's pleading here amount to more than 1000 pages of documents beyond the 48-page pleading itself. When citing one of these voluminous exhibits within the allegations, USPR fails to point to even a single identifier, much less a particular page number, or citation to paragraph on a particular page.

Since at least 1991, the Eleventh Circuit has plainly and repeatedly condemned "shotgun" pleadings as being "in no sense the "short and plain statement of the claim" required by Rule 8". *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001), quoting Fed. R. Civ. P. 8(a)(2). As explained sternly in *Magluta*, condemning and dismissing the disputed pleading at issue there,

> [i]t is fifty-eight pages long. It names fourteen defendants, and all defendants are charged in each count. The complaint is replete with allegations that "the

defendants" engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of. Each count incorporates by reference the allegations made in a section entitled "General Factual Allegations"—which comprises 146 numbered paragraphs—while also incorporating the allegations of any count or counts that precede it. *The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.* This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts, *see Anderson v. Dist. Bd. of Tr.,* 77 F.3d 364, 366–67 (11th Cir. 1996), and is the type of complaint that we have criticized time and again.

(emphasis added) 256 F.3d at 1284.

Here, like the pleading in *Magluta*, USPR's pleading is forty-eight pages long, and names RTC in addition to five new Third-Party Defendants, which it alternately groups as "Individual Defendants" or "Third-Party Defendants" throughout the pleading and largely fails to distinguish one specific defendant from another. Also like the pleading criticized and dismissed in *Magluta, supra*, USPR's pleading here begins with 121 numbered paragraphs of common allegations – visually separated by sundry and argument-style headings – then follows with thirteen counts, each count incorporating by reference the allegations made in those 121 numbered paragraphs.

However, also similar to the faulty pleading in *Magluta*, many of the 121 'general allegations' here name some defendants, but not others, and reference dates, events, actions, inactions, conclusory statements, and/or voluminous exhibits, that could not possibly apply to all such defendants or asserted claims. Thus, as in *Magluta*, "[t]he result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." 256 F.3d at 1284.

This Court has also explained that "[a] shotgun pleading is one in which each count incorporates the allegations of each preceding count … [which] fail to link each cause of action to its factual predicates, and bury what may be kernels of viable claims "beneath innumerable pages of rambling irrelevancies." "  *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1390 (S.D. Fla. 2014), citing *Paylor v. Hartford Fire Ins. Co.,* 748 F.3d 1117, 1125-26 (11th Cir. 2014), and quoting *Magluta*, 256 F.3d at 1284.  Contrastingly, where a disputed pleading "is relatively concise, and its counts do not incorporate the allegations of each preceding count", it is not a shotgun pleading. *Adler*, 31 F. Supp. 3d at 1390.

Significantly, as noted above herein, the Federal Rules and requisite pleading requirements do not impose on defendants or respondents the burden to dig through mountains of nonspecific information to determine a claimant's intent, determine which of the asserted claims apply to said respondent, or derive the bases for such purported claims.  To the contrary, this is a claimant's fundamental duty to create a viable pleading – to provide fair notice of its claims and the bases therefor to each defendant with simple and concise statements of ultimate fact.  Failing that, such a claimant's pleading is properly dismissed.

Here, USPR's 'litigation by inundation' serves as USPR's response to RTC's 18-page three-count Complaint based on the parties' second contract and asserting against USPR claims for specific performance, declaratory relief, and conversion (all state law claims).

USPR foists upon RTC, the new Third-Party Defendants, and the Court a Counterclaim and Third-Party Complaint that is the antithesis of the demands of Rules 8 and 12.  USPR's pleading at issue here largely fails to distinguish one "defendant" from another, groups defendants into the same counts, incorporates by reference all 121 general allegations in each and every count asserted in both the Counterclaim and the Third-Party Complaint, and fatally

lacks specificity both in allegation and in reference to more than 1000 pages of attached exhibits. In short, USPR's pleading here shotguns as many baseless assertions as possible, disregarding the clear language of the second contract and its express Release, *supra*, and precluding the formulation of a cogent response. For example, the phrase "upon information and belief" is used, sometimes more than once in single paragraph, no less than sixty-five (65) times, despite the assertion of multiple fraud-based claims requiring specificity of ultimate fact to survive a motion to dismiss.

Another example requires side-by-side comparison of the similar counts, such as the two breach of contract counts, the two fraud inducement counts, the two civil conspiracy counts, and so forth. In Counts I of the Counterclaim (¶¶ 122-131) and the Third-Party Complaint (¶¶ 177-183), there is little variance in the allegations, despite purporting to be against different parties and existing in what amounts to different pleadings (counterclaim versus third-party claim). Notably, after repeatedly realleging the 121 common allegations in every count, both breach of contract counts are quite brief, asserting the barest recitation of elements and mixing parties throughout. For example, Paragraph 129, purportedly asserted against RTC, alleges that "[d]espite repeated demands that PTH pay the $5 million to USPR, PTH has not made any payment to USPR to date." Yet Paragraphs 181-82, purportedly asserted against PTH, also alleges that "PTH breached the Promissory Note by failing to pay USPR the sum of $5 million due under the Note on January 31, 2015 [and t]o date, and despite USPR's demands for payment, PTH has not paid any portion of the $5 million due to USPR under the Promissory Note."

In Count VI of the Counterclaim, purportedly asserted against RTC alone, Paragraphs 170-71 allege that "[u]pon information and belief, RTC and the Third-Party Defendants acted in concert to defraud USPR and take from it millions of its shares [and that] RTC and the Third-

Party Defendants were acting for the benefit of each other."  Similarly, in Count VI of the Third-Party Complaint, purportedly asserted against "all Third-Party Defendants" – which ostensibly cannot include RTC, Paragraphs 223-24 allege that "[u]pon information and belief, RTC and the Third-Party Defendants acted in concert to defraud USPR and take from it millions of its shares [and that] RTC and the Third-Party Defendants were acting for the benefit of each other."  In point of fact, the allegations in Count VII of the Counterclaim and Count VI of the Third-Party Complaint are identical, save for the addition in the latter count of a single adjective.  And, ironically, most of the actual counts themselves are rather short when compared to the 121 common allegations (out of 229 total allegations).

The entire pleading is replete with such mirror images, reassertion of preceding allegations into every count and multiple parties regardless of title or placement.  USPR lacks only a smoke machine to complete its illusion of a viable pleading.

Finally, many of the thirteen asserted claims fail to state substantive causes of action, either through a failure to assert even the requisite elements, a failure to assert any ultimate facts in support of those elements (beyond those facts that can be found in the 121 common allegations), a failure to identify the party against whom the claim is asserted, or a combination.  For example, Count V of the Counterclaim purports to assert a claim for unjust enrichment against RTC (¶¶ 156-163).  Yet Paragraph 161 plainly alleges that "*[i]n the event* that the Court determines that USPR did not have the right to terminate the Restructuring Agreement and cancel the Preferred Stock, RTC *would be* unjustly enriched by having received the benefit of the Preferred Stock without having to pay USPR anything for it." (emphasis added)  So by USPR's own language, RTC has not been unjustly enriched, but "would be" so enriched *if* the Court finds

13

USPR had no right to terminate the second agreement.  Thus, Count V fails to state a viable cause of action.

In the interest of judicial economy, suffice it to say that the majority of USPR's pleading suffers from similar shortcomings, its length notwithstanding.

### ii.   Lack of Specificity as to Exhibits Cited.

Along with the overwhelming lack of particularity and specificity in USPR's allegations themselves, whether as to facts, dates, persons, or substance (discussed *infra*), USPR engages in a similarly overwhelming lack of identification or specificity when referencing or citing one of the voluminous exhibits attached to its pleading here.  These exhibits comprise literally more than 1000 pages of documents.  For example, USPR's Exhibit C comprises more than three hundred (300) pages, yet even in its Notice of Filing, much less the pleading itself, USPR fails to identify what Exhibit C is.  And through forty-eight pages and 229 numbered allegations USPR fails to reference even once the name of or a single page number within the 'cited' exhibit, much less provide a paragraph number or other identifier that would simply and concisely direct RTC and the Third-Party Defendants to the kernel of information on which USPR purportedly relies. This is plainly contrary to established pleading standards under the Rules.

This Court explained recently that "[a] shotgun pleading ... fail[s] to link each cause of action to its factual predicates, and *bur[ies] what may be kernels of viable claims "beneath innumerable pages* of rambling irrelevancies." " (emphasis added) *Adler*, 31 F. Supp. 3d at 1390, citing *Paylor,* 748 F.3d at 1125-26, and quoting *Magluta*, 256 F.3d at 1284.

### iii.   Lack of Specificity as to Fraud-Based Claims.

It is axiomatic from a plain reading of the Rules that any claim for relief must state sufficient ultimate facts in support of its asserted cause(s) of action to meet the pleading

standards and survive dismissal.  "Complaints that charge fraud further require a plaintiff to plead the claim with particularity." *McClain*, 2015 WL 3649461 at *5, citing Fed. R. Civ. P. 9(b).  So, as explained in *McClain*, when asserted any fraud-based claims, a complaint must set forth

> "(1) *precisely* what statements were made in what documents or oral representations or what omissions were made, (2) the *time and place* of each such statement *and the person responsible* for making (or, in the case of omissions, not making) same, (3) the *content* of such statements *and the manner in which they misled* the plaintiff, *and* (4) *what the defendants obtained* as a consequence of the fraud."

(emphasis added) 2015 WL 3649461 at *5, quoting *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir. 2008) (quoting *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 341–42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)).

The essence of USPR's entire pleading here, and thus every claim asserted therein, is couched in fraud.  The very first sentence (of five) in the first numbered allegation (of one hundred twenty-one) (Doc. 7, P. 12, ¶ 1) states "This case involves a *conspiracy* to *defraud* USPR." (emphasis added) That rest of that initial 'allegation' then goes on to state that

> Through the *machinations* of the Individual Defendants, RTC, and its affiliate PTH, *fraudulently induced* USPR into a Share Exchange Agreement [the parties' *first* contract]. Under that Agreement, USPR was to give millions of shares in exchange for the *promise* that RTC/PTH would be able to implement new "plasmafication" technology to refine mineral ore, including USPR's mineral ore, into saleable precious metals. What has become clear after *months and months* of *false promises, threats, and coercion* is that RTC/PTH had *neither the intention nor the capabilities to perform* any of the services or deliver any of the consideration promised. In short, RTC/PTH was given millions of USPR shares for doing nothing.

(emphasis added) Doc. 7, P. 12, ¶ 1.  This initial statement of USPR's position is pure rhetoric, conclusion, and argument – not a fact to be found – and names every single 'defendant',

CounterDefendant and Third-Party Defendants alike.  The same manner pervades the next five numbered multi-sentence allegations as well.

Throughout the first six numbered allegations, all of which  USPR accuses RTC *and* the Third-Party Defendants of sundry vague yet despicable acts and employs terms such as variations of "misrepresented", "scheme", "seeking to enrich themselves", "violation of their fiduciary duties", "manufactured" (as in lied), "bullying tactics", "coerced", "fabricated … materials and lies", "tales", "wrongful conduct", "temerity", "conspiracy" and "fraud".  [DE-7, PP. 12-14, ¶¶ 2-6].

Under this overarching theme of "conspiracy to defraud" by all named defendants, USPR identifies no less than seven (7) and possibly eight (8) specifically fraud-based or fraud-related claims out of its thirteen counts:  Counterclaim Counts II, III, VII, and Third-Party Complaint Counts II-VI.  [DE-7, PP. 132-142; 143-147; 169-176; 184-197; 198-207; 208-214; 215-221; and 222-229.   Thus, each and all of these counts fall within the heightened pleading standard mandated by Rule 9 for particularity and detailed fact.  *See McClain*, 2015 WL 3649461 at *5, citing Fed. R. Civ. P. 9(b); quoting *Mizzaro,* 544 F.3d at 1237 (quoting *Dura Pharms., Inc.,* 544 U.S. at 341-42,).   Of course, as noted herein above, each of those thirteen counts also incorporates by reference all of the preceding 121 allegations that begin as quoted above.

The pleading here purports to separate into a Counterclaim, asserting seven (7) counts against RTC, and a Third-Party Complaint, asserting six (6) counts against "the Individual Defendants" or "the Third-Party Defendants".   Yet most of those thirteen counts include reference to and 'allegations' against RTC and some or all of the Third-Party Defendants – and especially those asserted in the Third-Party Complaint – regardless of whether the count appears

in the Counterclaim or the Third-Party Complaint or how the count is titled as being asserted against.

Counterclaim Counts I-III, and VII, include allegations against some or all of the Third-Party Defendants – which by its very nature is improper since a third-party defendant is not a party to a counterclaim between the original plaintiff and defendant.  Third-Party Complaint Counts II-IV, and VI, include sundry allegations against RTC, the Plaintiff/Counter Defendant, as well as a smorgasbord of different groupings of the Third-Party Defendants, again with no regard for how the counts' titles direct the asserted claims.

Either standing alone, or with the shotgun nature of repeatedly realleging 121 allegations across every count in both the Counterclaim and Third-Party Complaint, this fatal flaw indisputably makes it virtually impossible for RTC or the individual defendants comprising "the Third-Party Defendants" to know which allegations of fact pertain to which defendant or are intended to support which claims for relief, and to respond appropriately.  Quite simply, USPR's pleading here must be dismissed.  *See e.g., Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015), quoting *Anderson v. Dist. Bd. of Tr.,* 77 F.3d 364, 366 (11th Cir. 1996) (" "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." ")

Substantively, USPR's myriad fraud-based claims within its self-themed "conspiracy to defraud USPR" landscape, miss the mark by referring repeatedly *ad infinitum* to materials, conversations, and so forth that pre-date the signing of the second contract and in some cases the first contract.  This is significant as it is this second contract alone which serves as the basis for Plaintiff/Counter Defendant RTC's three claims, since it expressly voided *ab initio* the first agreement between RTC and USPR and fully released all claims between them that may derive

from that original contract.  Such claims also *followed* USPR's receipt, review, and acceptance by its own committee of due diligence materials on which those allegations of fraud or misrepresentation were based.  *See e.g.,DE-12-7, Exh. N* (July 15, 2013 Due Diligence Request produced by PTH to USPR).

Accordingly, it is axiomatic that USPR's repeatedly vague and conclusory fraud allegations are moot to the extent they reference any action, inaction, conversation, representation, or related event prior to January 29, 2014.  Of course, this may explain why despite forty-eight pages and 229 numbered paragraphs, USPR's pleading here is oddly silent or vague with regard to specific dates, places, and persons.  For example, USPR fails to mention that Third-Party Defendants Altieri and Pane specifically wanted to abstain from being involved in USPR's due diligence and approval of transaction because they wanted to avoid a conflict of interest or even an appearance of conflict.  *See e.g., USPR's DE- 9-1*, PP. 29-30 of 142.

It is further axiomatic that when party enters into settlement agreement and full release to resolve fraud or other allegations regarding a *prior* contract and other disputes, particularly when said corporate party is comprised of sophisticated business persons and competently represented by counsel, such party is precluded from later reasserting those resolved and/or released disputes. That, after all, is the purpose of the strong public policy in Florida highly favoring enforcement of settlement agreements and releases contained therein.  *See e.g., Parker v. Great Lakes Dredge & Dock Corp.*, 8:07-CV-163-T-33TGW, 2008 WL 4534130, at *7 (M.D. Fla. 2008), unreported opinion, quoting *Hernandez v. Gil,* 958 So. 2d 390, 391 (Fla. 3d DCA 2007) ("Public policy of the State of Florida, whose law has been found to apply to this settlement contract, highly favors settlement agreements and courts will "seek to enforce them whenever possible." ").  *See also Sugar v. Estate of Stern*, --- So. 3d ---, 2015 WL 5603469, *3 (Fla. 3d DCA Sept. 24, 2015),

quoting *Sun Microsystems of Cal., Inc. v. Eng'r & Mfg. Sys., C.A.,* 682 So. 2d 219, 220 (Fla. 3d DCA 1996) (" "the public policy of the State of Florida, as articulated in numerous court decisions, highly favors settlement agreements among parties and will seek to enforce them whenever possible." ")

USPR's pleading here fails both procedurally and substantively to assert viable fraud-based claims under the heightened pleading standard of Rule 9 and applicable Florida law setting forth the mandatory elements any fraud-based claim. *See e.g., McClain,* 2015 WL 3649461 at *5, citing Fed. R. Civ. P. 9(b), and quoting *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir. 2008) (quoting *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 341–42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)).

### iv. Failure to Allege Claims Against Specific Defendants Individually.

As discussed herein above (see Section B.iii., *supra*), USPR's pleading here purports to contain a Counterclaim, asserting seven (7) counts against RTC, and a separate but related Third-Party Complaint, asserting six (6) counts against "the Individual Defendants" or "the Third-Party Defendants".  However, notwithstanding whether the count appears in the Counterclaim or the Third-Party Complaint, or how the count is titled as being asserted against, most of USPR's thirteen counts include reference(s) to and 'allegations' against RTC and some, if not all, of the Third-Party Defendants – and especially those counts asserted in the Third-Party Complaint.

For example, Counterclaim Counts I-III, and VII, include allegations against some or all of the Third-Party Defendants.  This is improper by its very nature since a third-party defendant plainly is not a party to a counterclaim between the original plaintiff and defendant.  And Third-Party Complaint Counts II-IV, and VI, include sundry allegations against RTC, the

Plaintiff/Counter Defendant, as well as a smorgasbord of different groupings of the Third-Party Defendants, again with no regard for how the counts' titles direct the asserted claims.

As discussed, *supra*, this fatal flaw indisputably makes it virtually impossible for RTC or the individual defendants comprising "the Third-Party Defendants" to know which allegations of fact pertain to which defendant or are intended to support which claims for relief, and to respond appropriately.  Quite simply, USPR's pleading here must be dismissed.  *See e.g., Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015), quoting *Anderson v. Dist. Bd. of Tr.,* 77 F.3d 364, 366 (11th Cir. 1996) (" "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." ")

III.    **CONCLUSION**

Based on the foregoing discussion and authority, Defendant/Counterclaimant USPR has failed to meet the strictly construed Federal pleading standards.  USPR has failed to assert any proper or viable claims against RTC.  Diversity jurisdiction under 28 U.S.C. § 1332 is destroyed. Supplemental jurisdiction under 28 U.S.C. § 1367 is inapplicable here.

**WHEREFORE**, Plaintiff/Counter Defendant Resource Technology Corporation respectfully requests that this Honorable Court grant this Motion to Dismiss USPR's Counterclaim.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Clerk of the Court and delivered to the following parties and their attorneys via the CM/ECF system on this 3rd day of November 2015:

Respectfully submitted,

Russell L. Forkey, P.A.

Attorney for RTC
1075 Broken Sound Pkwy NW, Suite 103
Boca Raton, FL 33487-3541
Telephone:  (561) 406-4644
Facsimile:  (561) 406-4633
rforeky@forkeylaw.com


By: _/s/ Russell L. Forkey_
       Russell L. Forkey, Esq.
       Florida Bar No. 146757


## SERVICE LIST

**BLANK ROME LLP**
*Counsel for Defendant U.S. Precious Metals, Inc.*
Jose R. Riguera, Esq.
Broward Financial Centre
500 East Broward Boulevard, Suite 2100
Fort Lauderdale, FL 33394
jriguera@blankrome.com


**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Inbal Paz Garrity, Esq.
Andrew T. Hambelton, Esq.
igarrity@blankrome.com
ahambelton@blankrome.com