**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

RESOURCE TECHNOLOGY
CORPORATION,

                                         **Case No.: 1:15-cv-23357**

       Plaintiff,

v.

U.S. PRECIOUS METALS, INC.,

       Defendant.
_____/

U.S. PRECIOUS METALS, INC.,

       Third-Party Plaintiff,

v.

PLASMAFICATION TECHNOLOGY
HOLDINGS, LLC; et al,

       Third-Party Defendants.
_____/

**THIRD-PARTY DEFENDANTS' MOTION TO DISMISS**
**THIRD-PARTY COMPLAINT AND MEMORANDUM OF LAW**

Third-Party Defendants Plasmafication Technology Holdings, LLC ("PTH"), Gennaro "Jerry" Pane ("Pane"), Joseph Spano ("Spano"), and Chad Altieri ("Altieri"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 8 and 12(b), and other applicable law, hereby move this Court to dismiss the Third-Party Complaint filed herein by Defendant/Third-Party Plaintiff U.S. Precious Metals, Inc. ("USPR") on or about September 25, 2015, and further state as follows:

I.      **INTRODUCTION**

      A.      **Procedural Case History**

RTC filed this action in the Circuit Court of the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida.  On September 4, 2015, USPR filed its Notice of Removal. [DE-1].  In its original complaint, RTC alleged claims for Specific Performance, Declaratory Relief and Conversion.  [DE-1-3].  Third-Party Defendants were not parties to the initial action.

In response to this pleading, USPR filed its Answer, Affirmative Defenses, Counterclaim and Third-Party Complaint, adding as Third-Party Defendants, PTH, Pane, Spano, Schneer, and Altieri.  [DE-7].  The exhibits attached to the Counterclaim and Third-Party Complaint exceed 1000 pages of documents, many of which are composites, duplicative, and/or irrelevant to the causes of action USPR purports to assert.  [DE-7-1, 7-2, 8, 8-1, 8-2, 9, 9-1, 10, 10-1, 11, 11-1, 11-2, 11-3, 12, 12-1, 12-2, 12-3, 12-4, 12-5, 12-6, 12-7 and 12-8].

With the filing of its Third-Party Complaint, USPR asserts in the Counterclaim and Third-Party Complaint that "[t]his Court has subject matter jurisdiction over this Counterclaim, pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between USPR, a citizen of *Delaware* and *New Jersey*, and RTC a citizen of *Florida*…" (emphasis added) [DE-7, P. 15, ¶ 14].  Yet USPR plainly states that both Pane and Spano are individuals residing in *New Jersey* [DE-7, P. 14, ¶10; P. 15, ¶ 11].  As a corollary, USPR asserts that this Court has jurisdiction over Spano and Pane not only under 28 U.S.C. § 1367 but also pursuant to Florida's long-arm statute, Section 48.193, Fla. Stat., because they operated, conducted, engaged in or carried on a business venture in this state.  [DE-7, P. 16, ¶ 18].

B.      **The Parties' Dispute**

In the interest of judicial economy, Third-Party Defendants hereby adopt and incorporate by reference as if fully set forth herein the discussion set forth in Counter Defendant RTC's Motion to Dismiss USPR's Counterclaim.

## II.      MOTION TO DISMISS STANDARD

In the interest of judicial economy, Third-Party Defendants hereby adopt and incorporate by reference as if fully set forth herein the discussion set forth in Counter Defendant RTC's Motion to Dismiss USPR's Counterclaim.

## III.     DISCUSSION OF AUTHORITY

### A.      Jurisdiction

#### i.      Original Diversity Jurisdiction is Destroyed.

In the interests of judicial economy, the Third-Party Defendants hereby adopt and incorporate by reference as if more fully set forth herein the discussion of this issue as set forth in Counter Defendant RTC's Motion to Dismiss Counterclaim.

#### ii.      Supplemental Jurisdiction is Inapplicable.

Supplemental jurisdiction, as codified by 28 U.S.C. § 1367, *supra*, authorizes the Court to exercise "jurisdiction over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

As explained by this country's highest Court in *Owen Equip., supra*, "[i]f ... a "common nucleus of operative fact" were the only requirement for ancillary [or supplemental] jurisdiction in a diversity case, ... Congress' requirement of complete diversity would thus [be] evaded completely". *Owen Equip.*, 437 U.S. at 374-75.  In other words, a party "could defeat the statutory requirement of complete diversity by the simple expedient of suing only those defendants who were of diverse citizenship and waiting for them to implead nondiverse defendants." *Id*.

As *Owen Equip.* further explains, though "the exercise of ancillary jurisdiction over nonfederal claims has often been upheld in situations involving impleader, cross-claims or counterclaims[, …] in determining whether jurisdiction over a nonfederal claim exists, the context in which the nonfederal claim is asserted is crucial." *Id*. at 375-76.  There are two primary considerations.  First, the relation to the original complaint of the supplemental or ancillary claims is not merely factual similarity but logical dependence, as "[a] third-party complaint depends at least in part upon the resolution of the primary lawsuit." *Id*. at 376.

Second, though ancillary or supplemental jurisdiction generally involves claims by a defending party haled into court against his will, a party who voluntarily chooses to bring suit upon a state-law claim in federal court and "has chosen the federal rather than the state forum … must thus accept its limitations." *Owen Equip., id.,* 437 U.S. at 376.  Here, USPR is the party that voluntarily chose to remove Plaintiff/Counter Defendant RTC's state-law claims to federal court on the basis of diversity jurisdiction.  Thus, USPR must accept the jurisdictional limitations of its chosen forum.

"[N]either the convenience of the litigants nor considerations of judicial economy can suffice to justify the extension of the doctrine of ancillary [or supplemental] jurisdiction to a plaintiff's cause of action against a citizen of the same State in a diversity case." *Id*. at 377.  *Cf. Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248, 1252-53 (11th Cir. 1988) (holding that destruction of diversity jurisdiction in an international indemnity action did not preclude exercise of ancillary jurisdiction where "the main action and cross-claim ar[o]se from the same operative facts, but … also were logically interdependent." (citing *Owen Equip., id.*))

Now codified into 28 U.S.C. § 1367, as noted *supra*, this "statute reflects a dichotomy between a federal court's *power* to exercise supplemental jurisdiction, § 1367(a), and its

*discretion* not to exercise such jurisdiction, § 1367(c)." (emphasis in original) *Lucero v. Trosch*, 121 F.3d 591, 597-98 (11th Cir. 1997) (citations omitted).  The Court's exercise of supplemental jurisdiction, then, must satisfy both criteria – the power *and* the discretion in favor of exercising such power.  *See Lucero*, 121 F.3d at 598.

As to "power", the supplemental claims must form part of the same case or controversy as the original state claims "which arise out of a common nucleus of operative fact with a substantial federal claim." *Lucero, id*., citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724–25, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (other citations omitted). Tellingly, in *Lucero*, the allegations of the complaint there satisfied "the substantiality requirement with respect to the federal … claim" because they asserted a viable claim under the federal Freedom of Access to Clinic Entrances Act (or FACE) (codified in 18 U.S.C. § 248) and the state law nuisance claim relied on identical actions of defendants.  121 F.3d at 598.  Thus, the state law claim and the substantial federal claim derived from a common nucleus of operative facts. *Lucero, id.*

This Court has recently reiterated this same principle.  In *Geter v. Galardi S. Enterprises, Inc.*, 43 F. Supp. 3d 1322, 1329 (S.D. Fla. 2014), this Court quoted *Lucero, supra* at 597, stating that " "[t]he constitutional 'case or controversy' standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim." "  Here, as discussed herein below, there simply is no federal claim, substantial or otherwise.  Moreover, Defendant/Counter Plaintiff/Third-Party Plaintiff chose to remove RTC's state-law claims to this federal Court.  In *Geter*, as in *Lucero*, the original claims including a federal Fair Labor Standards Act claim.  43 F. Supp. 3d at 1329.  The counterclaim in *Geter* asserted a breach of contract claim based on the same "contracts purportedly in effect between

Plaintiffs and [Counter Plaintiff], the terms of which may be dispositve" on the original FLSA claims. *Id.*

No such nexus exists here as there is no federal claim of any kind. Arguably, then, this Court has no authority to hear non-diverse state claims where the original jurisdiction rested solely on diversity which USPR destroyed. Where there is no power, there is no discretion.

> **iii.  UPSR's Pleading Presents a Complex Issue of State Law that Substantially Dominates Over the Original Claims Removed to this Court under Diversity Jurisdiction.**

Assuming arguendo that this Court has the power to assert supplemental jurisdiction in this matter, the question next becomes whether it should exercise that power. The plain language makes clear that where a supplemental "claim raises a novel *or complex* issue of State law," or "*substantially predominates* over the claim[s] … over which the district court has original jurisdiction", the Court "may decline to exercise supplemental jurisdiction". (emphasis added) 28 U.S.C. § 1367(c)(1)-(2). *See also Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir. 1997)

This action began as RTC's comparatively concise and straightforward suit in state court for two counts in equity and one in law. After being removed to this Court by USPR, this same case is now hugely (and unnecessarily) complicated by virtue of USPR's addition of *thirteen* new counts (all state-law claims) and five new parties, over 229 numbered paragraphs and over 1000 pages of attached exhibits. Though not complex in principle, the staggering amount of information foisted by USPR's supplemental claims – largely based in fraud and somewhat on contract theories – renders these claims complex, if not novel. *See* 28 U.S.C. § 1367(c)(1).

Additionally, USPR's 48-page assertion of thirteen claims – including two counts of civil conspiracy to defraud, aiding and abetting breach of fiduciary duty – and incorporated

voluminous materials more than substantially predominate RTC's 18-page Complaint and three claims – specific performance, declaratory relief, and conversion.  *See* 28 U.S.C. § 1367(c)(2).

Since fraud claims are almost always questions of fact, should USPR's multiple fraud claims stand, the judicial and litigation expenditures will be overwhelming.  These state-law issues do not require the time or efforts of this Court.  This Court is well within its discretion to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(1)-(2).

### iv.    There is No Substantial Federal Claim.

As discussed above, supplemental jurisdiction requires both the power and the discretion in favor of exercising that power where there exists a case or controversy arising out of a common nucleus of operative fact with a substantial federal claim.  *See Geter*, 43 F. Supp. 3d at 1239, quoting *Lucero*, 121 F.3d at 597. Though there is some conflict between decisions in the 11th Circuit and its District Courts[1], most reiterate the requirement that there exist a "substantial federal claim" in conjunction with the common nucleus of operative fact in order for supplemental jurisdiction to extend.

Not one of USPR's multiple conjecture-filled claims has any basis in federal law. Though it tangentially alludes to some unspecified SEC involvement, purportedly to give credence to its assertions, USPR makes no federal law claim.  Yet, oddly, it is USPR that removed this case to this Court and then added thirteen new claims and five new parties.  Under *Lucero*, then, there can be no "constitutional "case or controversy" standard confers supplemental

---

[1] *See e.g., Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248, 1252-53 (11th Cir. 1988) (holding that destruction of diversity jurisdiction in an international indemnity action did not preclude exercise of ancillary jurisdiction where "the main action and cross-claim ar[o]se from the same operative facts, but … also were logically interdependent." (citing *Owen Equip., id.*), contrasted by the 11th Circuit's 1997 decision in *Lucero, id.* (reiterating that "[t]he constitutional "case or controversy" standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim.")

jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim." 121 F.3d at 597. Accordingly, USPR's pleading should be dismissed.

However, setting aside the question of whether this Court has authority to exercise supplemental jurisdiction over a state claim in federal court (versus a federal claim) on diversity grounds, any such supplemental claim must be sufficiently and viably stated before this Court – or any court – may hear it. *See discussion, supra*. USPR has failed to meet this basic threshold as set forth below. Thus, USPR's pleading should be dismissed.

> **v.     There is No Common Nucleus of Operative Fact Between Plaintiff's Complaint and USPR's Counter Claim & Third-Party Complaint.**

Supplemental jurisdiction requires both the power and the discretion in favor of exercising that power where there exists a case or controversy arising out of a common nucleus of operative fact with a substantial federal claim. *See Geter*, 43 F. Supp. 3d at 1239, quoting *Lucero*, 121 F.3d at 597. Even if there were a substantial federal claim connecting the state claims originally asserted by RTC and removed to this Court by USPR, or alternatively, even if such a substantial federal claim were unnecessary and a federal court could decide purely state claims in a non-diverse case through supplemental jurisdiction, the instant pleading lacks any common nucleus of operative facts to connect the original claims to the supplemental claims. This arguably defeats any application or exercise of supplemental jurisdiction here.

Looking closely at UPSR's 229 allegations, including 121 common allegations realleged through each and every new claim against every defendant, the inescapable conclusion is that everything underlying the original claims arises out of the *second* contract – the Restructuring Agreement [DE-7-1, pp. 8 – 22]. A careful reading of that second contract makes plain that once the formal closing of that contract occurred, RTC's obligations were separate and apart from those of the PTH, and  RTC's technical responsibilities ended upon such event.  Stated another

way, there is no need to address PTH's obligations to resolve any questions regarding RTC's obligations under the second contract.

Given that, USPR's allegations do not and cannot arise without including the fraud allegations (about which USPR drones repeatedly through Paragraphs 1-121 of its pleading here) that were part of dispute over the *first* contract [DE-9-1, pp. 32 – 56]  which was resolved, voided and released by second contract [DE-7-1, pp. 8 – 22]. *See discussion, supra*.  Again, this was the whole point of the second contract – to address and *resolve* USPR's allegations and claims of fraudulent inducement and/or misrepresentation.  Thus, there is no common nucleus of operative facts, with or without a substantial federal claim.

Furthermore, as a result, UPSR is precluded from asserting that the fraudulent inducement and related claims of which is now complains arose out of same nucleus of operative facts.  The second contract facially and expressly supersedes and voids the first contract, and the general release in that second contract resolved *all* of the allegations of fraud that pertained only to the first contract.  Logically, it seems likely that a desire to distract this Court's attention from the second contract underlies USPR's vagueness in the pretentious fraud allegations here specifically because all such allegations, even if viable, arose from USPR's dispute over the first contract and resolved by the second.

**vi.      There is No Personal Jurisdiction Relative to  Spano Under Fla. Stat. 48.193:**

A federal court sitting in diversity is required to undertake a two-step inquiry in determining whether personal jurisdiction exists.  The exercise of jurisdiction must: (1) be appropriate under the state long-arm statute; and (2) not violate the Due Process Clause of the Fourteenth Amendment. *United Techs. Corp., v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009).

Florida's long-arm statute is to be strictly construed. Under Florida law, the plaintiff bears the burden of proving personal jurisdiction. When a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 627 (11th Cir. 1996).

There two kinds of jurisdiction under Florida's long-arm statute: specific and general. *See Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino,* 447 F.3d 1357, 1360 n. 3 (11th Cir. 2006). Specific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint, while general jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated. A simple review of the Third-Party Complaint and the Affidavit submitted by Spano in this case reflect that the Third-Party Complaint does not contain sufficient factual allegations to create long-arm jurisdiction over Spano. Moreover, Spano's affidavit specifically contradicts the same.

**B.      USPR's Counterclaim and Third-Party Complaint Violates the Federal Pleading Standard(s) and Fails to Provide the Third-Party Defendants with Fair Notice of USPR's claims and the Bases Therefor.**

In the interest of judicial economy, Third-Party Defendants hereby adopt and incorporate by reference as if fully set forth herein the discussion set forth in Counter Defendant RTC's Motion to Dismiss USPR's Counterclaim relative to this issue.

**i.  USPR's Pleading is a Shotgun Pleading and Incorporates by Reference of 121 out of 229 Allegations in Each Cause of Action Asserted.**

In the interest of judicial economy, Third-Party Defendants hereby adopt and incorporate by reference as if fully set forth herein the discussion set forth in Counter Defendant RTC's Motion to Dismiss USPR's Counterclaim relative to this issue.

### ii.   Lack of Specificity as to Exhibits Cited.

In the interest of judicial economy, Third-Party Defendants hereby adopt and incorporate by reference as if fully set forth herein the discussion set forth in Counter Defendant RTC's Motion to Dismiss USPR's Counterclaim relative to this issue.

### iii.   Lack of Specificity as to Fraud-Based Claims.

It is axiomatic from a plain reading of the Rules that any claim for relief must state sufficient ultimate facts in support of its asserted cause(s) of action to meet the pleading standards and survive dismissal.  "Complaints that charge fraud further require a plaintiff to plead the claim with particularity."  *McClain*, 2015 WL 3649461 at *5, citing Fed. R. Civ. P. 9(b).  So, as explained in *McClain*, when asserted any fraud-based claims, a complaint must set forth

> "(1) *precisely* what statements were made in what documents or oral representations or what omissions were made, (2) the *time and place* of each such statement *and the person responsible* for making (or, in the case of omissions, not making) same, (3) the *content* of such statements *and the manner in which they misled* the plaintiff, *and* (4) *what the defendants obtained* as a consequence of the fraud."

(emphasis added) 2015 WL 3649461 at *5, quoting *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir. 2008) (quoting *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 341–42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)).

The essence of USPR's entire pleading here, and thus every claim asserted therein, is couched in fraud.  The very first sentence (of five) in the first numbered allegation (of one

hundred twenty-one) (Doc. 7, P. 12, ¶ 1) states "This case involves a *conspiracy* to *defraud* USPR." (emphasis added) That rest of that initial 'allegation' then goes on to state that

> Through the *machinations* of the Individual Defendants, RTC, and its affiliate PTH, *fraudulently induced* USPR into a Share Exchange Agreement [the parties' *first* contract]. Under that Agreement, USPR was to give millions of shares in exchange for the *promise* that RTC/PTH would be able to implement new "plasmafication" technology to refine mineral ore, including USPR's mineral ore, into saleable precious metals. What has become clear after *months and months* of *false promises, threats, and coercion* is that RTC/PTH had *neither the intention nor the capabilities to perform* any of the services or deliver any of the consideration promised. In short, RTC/PTH was given millions of USPR shares for doing nothing.

(emphasis added) Doc. 7, P. 12, ¶ 1.  This initial statement of USPR's position is pure rhetoric, conclusion, and argument – not a fact to be found – and names every single 'defendant', Counter Defendant and Third-Party Defendants alike.  The same manner pervades the next five numbered multi-sentence allegations as well.

Throughout the first six numbered allegations, all of which  USPR accuses RTC *and* the Third-Party Defendants of sundry vague yet despicable acts and employs terms such as variations of "misrepresented", "scheme", "seeking to enrich themselves", "violation of their fiduciary duties", "manufactured" (as in lied), "bullying tactics", "coerced", "fabricated … materials and lies", "tales", "wrongful conduct", "temerity", "conspiracy" and "fraud".  Doc. 7, PP. 12-14, ¶¶ 2-6.

Under this overarching theme of "conspiracy to defraud" by all named defendants, USPR identifies no less than seven (7) and possibly eight (8) specifically fraud-based or fraud-related claims out of its thirteen counts:  Counterclaim Counts II, III, VII, and Third-Party Complaint Counts II-VI.  *Doc. 7*, PP. 132-142; 143-147; 169-176; 184-197; 198-207; 208-214; 215-221; and 222-229.  Thus, each and all of these counts fall within the heightened pleading standard mandated by Rule 9 for particularity and detailed fact.  *See McClain*, 2015 WL 3649461 at *5,

citing Fed. R. Civ. P. 9(b); quoting *Mizzaro,* 544 F.3d at 1237 (quoting *Dura Pharms., Inc.,* 544

U.S. at 341-42,).   Of course, as noted herein above, each of those thirteen counts also

incorporates by reference all of the preceding 121 allegations that begin as quoted above.

  The pleading here purports to separate into a Counterclaim, asserting seven (7) counts

against RTC, and a Third-Party Complaint, asserting six (6) counts against "the Individual

Defendants" or "the Third-Party Defendants".   Yet most of those thirteen counts include

reference to and 'allegations' against RTC and some or all of the Third-Party Defendants – and

especially those asserted in the Third-Party Complaint – regardless of whether the count appears

in the Counterclaim or the Third-Party Complaint or how the count is titled as being asserted

against.

  Counterclaim Counts I-III, and VII, include allegations against some or all of the Third-

Party Defendants – which by its very nature is improper since a third-party defendant is not a

party to a counterclaim between the original plaintiff and defendant.   Third-Party Complaint

Counts II-IV, and VI, include sundry allegations against RTC, the Plaintiff/Counter Defendant,

as well as a smorgasbord of different groupings of the Third-Party Defendants, again with no

regard for how the counts' titles direct the asserted claims.

  Either standing alone, or with the shotgun nature of repeatedly realleging 121 allegations

across every count in both the Counterclaim and Third-Party Complaint, this fatal flaw

indisputably makes it virtually impossible for RTC or the individual defendants comprising "the

Third-Party Defendants" to know which allegations of fact pertain to which defendant or are

intended to support which claims for relief, and to respond appropriately.   Quite simply, USPR's

pleading here must be dismissed.  *See e.g., Weiland v. Palm Beach County Sheriff's Office*, 792

F.3d 1313, 1325 (11th Cir. 2015), quoting *Anderson v. Dist. Bd. of Tr.,* 77 F.3d 364, 366 (11th

Cir. 1996) ("it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.").

    This exact type of pleading style utilized by USPR was discussed in *Drilling Consultants, Inc. v. First Montauk Securities Corp.,* 806 F.Supp.2d 1228, 1234 (M.D. Fla. 2011) wherein the Court stated:

> Because fair notice is "[p]erhaps the most basic consideration" underlying Rule 9(b), the plaintiff who pleads fraud must "reasonably notify the defendants of their purported role in the scheme." Therefore, in a case involving [more than one] defendant … "the complaint should inform each defendant of the nature of his alleged participation in the fraud." "*Rule 9(b) is not satisfied [if] the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'*" (Emphasis added).

    Substantively, USPR's myriad fraud-based claims within its self-labeled "conspiracy to defraud USPR" landscape, miss the mark by referring repeatedly *ad infinitum* to materials, conversations, and so forth that *pre-date* the signing of the first contract, in certain cases, and in all cases *pre-dated* the signing of the second contract which serves as the basis for Plaintiff/Counter Defendant RTC's three claims and expressly voided *ab initio* the original agreement between RTC and USPR and fully released all claims between them that may derive from that original contract. Such claims also *followed* USPR's receipt, review, and acceptance of due diligence materials on which those allegations of fraud or misrepresentation were based. *See e.g., [DE-8-1 and 12-7, Exh. N* (July 15, 2013 Due Diligence Request produced by PTH to USPR).

    Accordingly, it is axiomatic that USPR's repeatedly vague and conclusory fraud allegations are moot to the extent they reference any action, inaction, conversation, representation, or related event prior to January 29, 2014. Of course, this may explain why despite forty-eight pages and 229 numbered paragraphs, USPR's pleading here is oddly silent or

vague with regard to specific dates, places, and persons.  For example, USPR fails to mention that Third-Party Defendants Altieri and Pane specifically wanted to abstain from being involved in USPR's due diligence and approval of transaction because they wanted to avoid a conflict of interest or even an appearance of conflict.  *See e.g., DE- 9-1*, P. 30 of 142.

It is further axiomatic that when party enters into settlement agreement and full release to resolve fraud allegations regarding a *prior* contract and other disputes, particularly when said corporate party is comprised of sophisticated business persons and competently represented by counsel, such party is precluded from later reasserting those resolved and/or released disputes. That, after all, is the purpose of the strong public policy in Florida highly favoring enforcement of settlement agreements and releases contained therein.  *See e.g., Parker v. Great Lakes Dredge & Dock Corp.*, 8:07-CV-163-T-33TGW, 2008 WL 4534130, at *7 (M.D. Fla. 2008), unreported opinion, quoting *Hernandez v. Gil,* 958 So. 2d 390, 391 (Fla. 3d DCA 2007) ("Public policy of the State of Florida, whose law has been found to apply to this settlement contract, highly favors settlement agreements and courts will "seek to enforce them whenever possible." ").  *See also Sugar v. Estate of Stern*, --- So. 3d ---, 2015 WL 5603469, *3 (Fla. 3d DCA Sept. 24, 2015), quoting *Sun Microsystems of Cal., Inc. v. Eng'r & Mfg. Sys., C.A.,* 682 So. 2d 219, 220 (Fla. 3d DCA 1996) (" "the public policy of the State of Florida, as articulated in numerous court decisions, highly favors settlement agreements among parties and will seek to enforce them whenever possible." ")

USPR's pleading here fails both procedurally and substantively to assert viable fraud-based claims under the heightened pleading standard of Rule 9 and applicable Florida law setting forth the mandatory elements any fraud-based claim.  *See e.g., McClain,* 2015 WL 3649461 at *5, citing Fed. R. Civ. P. 9(b), and quoting *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237

(11th Cir. 2008) (quoting *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 341–42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)).

### iv. Failure to Allege Claims Against Specific Defendants Individually.

As discussed herein above (see Section II.B.iii., *supra*), USPR's pleading here purports to contain a Counterclaim, asserting seven (7) counts against RTC, and a separate but related Third-Party Complaint, asserting six (6) counts against "the Individual Defendants" or "the Third-Party Defendants".  However, notwithstanding whether the count appears in the Counterclaim or the Third-Party Complaint, or how the count is titled as being asserted against, most of USPR's thirteen counts include reference(s) to and 'allegations' against Plaintiff/Counter Defendant RTC and some, if not all, of the Third-Party Defendants – and especially those counts asserted in the Third-Party Complaint.

For example, Counterclaim Counts I-III, and VII, include allegations against some or all of the Third-Party Defendants.  This is improper by its very nature since a third-party defendant plainly is not a party to a counterclaim between the original plaintiff and defendant.  And Third-Party Complaint Counts II-IV, and VI, include sundry allegations against RTC, the Plaintiff/CounterDefendant, as well as a smorgasbord of different groupings of the Third-Party Defendants, again with no regard for how the counts' titles direct the asserted claims.

As discussed, *supra*, this fatal flaw indisputably makes it virtually impossible for the individual defendants comprising "the Third-Party Defendants" or RTC to know which allegations of fact pertain to which defendant or are intended to support which claims for relief, and to respond appropriately.  Quite simply, USPR's pleading here must be dismissed.  *See e.g., Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015), quoting

*Anderson v. Dist. Bd. of Tr.,* 77 F.3d 364, 366 (11th Cir. 1996) (" "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." ")

## III.    CONCLUSION

Based on the foregoing discussion and authority, Defendant/Counterclaimant/Third-Party Plaintiff USPR has failed to meet the strictly construed Federal pleading standards.  USPR has failed asserted any proper or viable claims against the Third-Party Defendants.  Supplemental jurisdiction under 28 U.S.C. § 1367 is inapplicable here.  Alternatively, this Court may decline to exercise supplemental jurisdiction under Section 1367(c)(1)-(2).  Thus, dismissal of USPR's Third-Party Complaint is warranted.

USPR's pleading should be dismissed and remanded to state court.  Alternatively, the non-diverse Third-Party Defendants must be dismissed so as to remedy the destruction of complete diversity here.

**WHEREFORE**, Third-Party Defendants Plasmafication Technology Holdings, LLC, Gennaro "Jerry" Pane, Joseph Spano, and Chad Altieri, respectfully request that this Honorable Court grant this Motion to Dismiss USPR's Third-Party Complaint.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Clerk of the Court and delivered to the following parties and their attorneys via the CM/ECF system on this 3rd day of November 2015:

Respectfully submitted,
Russell L. Forkey, P.A.
Attorney for Third-Party Defendants
(excluding Schneer)
1075 Broken Sound Pkwy NW, Suite 103
Boca Raton, FL 33487-3541
Telephone:  (561) 406-4644

Facsimile:  (561) 406-4633
rforeky@forkeylaw.com


By: _/s/ Russell L. Forkey_
            Russell L. Forkey, Esq.
            Florida Bar No. 146757

## SERVICE LIST

**BLANK ROME LLP**
*Counsel for Defendant U.S. Precious Metals, Inc.*
Jose R. Riguera, Esq.
Broward Financial Centre
500 East Broward Boulevard, Suite 2100
Fort Lauderdale, FL 33394
 jriguera@blankrome.com


**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Inbal Paz Garrity, Esq.
Andrew T. Hambelton, Esq.
igarrity@blankrome.com
ahambelton@blankrome.com